**ASHLEY HARADA**
**HARADA LAW FIRM, PLLC**
2722 Third Avenue North, Suite 400
P.O. Box 445
Billings, MT 59103
Telephone: (406) 294-2424
Facsimile: (406) 294-5586
ashley@haradalawfirm.com

ATTORNEY FOR DEFENDANT

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL JAMES MASON, <br><br> Defendant. | CR-16-23-BU-DLC-02 <br><br><br> **BRIEF IN SUPPORT OF MOTION TO DISMISS COUNTS I AND II OF THE INDICTMENT** |

## INTRODUCTION AND SUMMARY

Counts I and II of the Indictment are subject to dismissal because they do not allege a federal crime. Mason was a licensed and registered medical marijuana provider or caregiver whose cultivation of marijuana was in conformity with Montana's statutory and regulatory scheme, which excludes him from federal prosecution for the manufacture of marijuana.

1

## STATEMENT OF THE CASE

Mason is named in a four-count Indictment with co-defendant Charlton Campbell. Count I alleges Mason knowingly and unlawfully conspired and agreed with other persons to manufacture and distribute more than 1,000 marijuana plants, in violation of 21 U.S.C. § 846. Count II alleges Mason knowingly and unlawfully conspired and agreed with other persons to manufacture and distribute marijuana in the form of butane hash oil, in violation of 21 U.S.C. § 846.

## STATEMENT OF THE LAW AND APPLICATION TO MASON

The indictment in this case is defective as a matter of law because Mason cultivated his marijuana plants while serving as a registered "caregiver" or "provider" under Montana law. Therefore, he cannot be charged with the "manufacture" of marijuana as that term is defined under the Controlled Substances Act (CSA).

The indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). One purpose served by an indictment is to "inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction if one should be had." *Russell v. United States*, 369 U.S. 749, 768 (1962) (quoting *United States v.*

*Cruikshank*, 92 U.S. 542, (1875)). Thus, an indictment that alleges conduct that is not criminal under the relevant statute is subject to dismissal for failure to state a federal offense. *See, e.g., United States v. Superior Growers Supply Co.*, 982 F.2d 173 (6th Cir. 1992); *United States v. McGhee*, 854 F.2d 905, 908-09 (6th Cir. 1988). "Where an indictment sets forth a bare recitation of the statutory language, such indictment may be sustained only if the statute sets forth all the necessary elements fully and clearly, without ambiguity or uncertainty, accompanied by a statement of facts sufficient to inform the accused of the specific conduct which is prohibited." *United States v. Salisbury*, 983 F.2d 1369, 1374 (6th Cir. 1993).

Here, Count I and Count II set forth nothing more than a bare recitation of the statutory language. Count I alleges Mason knowingly and unlawfully conspired and agreed with other persons to manufacture and distribute more than 1,000 marijuana plants, in violation of 21 U.S.C. § 846. Count II alleges Mason knowingly and unlawfully conspired and agreed with other persons to manufacture and distribute marijuana in the form of butane hash oil, in violation of 21 U.S.C. § 846. The indictment makes no mention of Mason's status as a registered caregiver or provider under the Montana Marijuana Act. Nor does it allege that Mason engaged in conduct that exceeded the scope of his practice as a registered caregiver or provider

3

under the Montana Marijuana Act or extended beyond the manufacture of marijuana.

>Under the Controlled Substances Act, the term "manufacture" means:
>
>>the production, preparation, propagation, compounding, or processing of a drug or other substance, either directly or indirectly or by extraction from substances of natural origin, or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of such substance or labeling or relabeling of its container; *except that such term does not include the preparation, compounding, packaging, or labeling of a drug or other substance in conformity with applicable State or local law by a practitioner as an incident to his administration or dispensing of such drug or substance in the course of his professional practice.* The term "manufacturer" means a person who manufactures a drug or other substance.

21 U.S.C. § 802(15) (emphasis added).

According to this definition, the term "manufacture" does not encompass (1) the "preparation, compounding, packaging, or labeling" of a drug; (2) by a "practitioner"; (3) who acts in conformity with applicable state law; and (4) administers or dispenses the drug "in the course of his professional practice." *Id*.

The term "practitioner," as defined in the Controlled Substances Act, means:

>a physician, dentist, veterinarian, scientific investigator, pharmacy, hospital, *or other person licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which he practices or does research, to distribute, dispense,*

> conduct research with respect to, *administer*, or use in teaching or chemical analysis, a controlled substance in the course of professional practice or research.

21 U.S.C. § 802(21) (emphasis supplied).

Thus, like the definition of manufacture, the broad definition of practitioner expressly recognizes the role of states in the licensing and registration of practitioners. This statutory language is in keeping with the pre-emption provision of the CSA, which provides:

> No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision . . . and that State law so that the two cannot consistently stand together.

21 U.S.C. § 903.

As recognized by the United States Supreme Court in *Gonzales v. Oregon*, 546 U.S. 243 (2006), the CSA "manifests no intent to regulate the practice of medicine generally," which is understandable given the "great latitude" afforded the States under their police powers to "legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Gonzales v. Oregon*, 546 U.S. at 270 (internal citation and quotation omitted). Instead, the "structure and operation of the CSA presume and rely upon a functioning medical profession regulated under the States' police

powers." *Id*. Thus, the Government's authority to prohibit dispensing controlled substances "in the face of a state medical regime permitting such conduct" is highly circumscribed. *Id*. at 275. In sum, the Government is generally required to defer to the regulation of medicine by the individual states.

Against this backdrop, this Court must determine whether Montana's enactment of the Montana Marijuana Act establishes the sort of medical regime described in *Gonzales v. Oregon*. It does. The purpose of the Montana Marijuana Act is to "provide legal protections to persons with debilitating medical conditions who engage in the use of marijuana to alleviate the symptoms of the debilitating medical condition." Mont. Code Ann. § 50-46-301. The Act lists several conditions that are defined as debilitating medical conditions, including cancer, epilepsy, multiple sclerosis, Chron's disease and severe chronic pain. Mont. Code Ann. § 50-46-302(2)(a-k).

Strict requirements are set forth in Montana's statutory scheme to address the requirements for being a medical marijuana cardholder and a medical marijuana provider or caregiver. Mont. Code Ann. §§ 50-46-307 to -308. A registered cardholder, provider, or marijuana-infused products provider must keep their registry identification card in their immediate

possession at all times. Mont. Code Ann. § 50-46-317. A provider of medical marijuana or marijuana-infused products provider may possess 4 mature plants, 12 seedlings, and 1 ounce of usable marijuana for each registered cardholder who has named the person as the registered cardholder's provider. Mont. Code Ann. § 50-46-319.

In sum, the Montana Marijuana Act provides a comprehensive statutory scheme designed to regulate the use of marijuana for medical purposes as a means to address debilitating medical conditions. The statutory scheme draws on the expertise of physicians, who determine in their expert opinion whether the patient may benefit from the use of medical marijuana. It also requires the participation of caregivers, who provide the medical marijuana in the same manner as pharmacists who fill prescriptions for pharmaceutical products on behalf of patients. As such, a primary caregiver or caregiver who provides medical marijuana to a qualified patient meets the "practitioner" exemption from the definition of "manufacture" set form in 21 U.S.C. § 802(15). The cultivation of medical marijuana entails the "preparation, compounding, packaging, or labeling" of a drug. *Id*.

In addition, to comply with the Montana Marijuana Act, a caregiver must act "in conformity with applicable state law." *Id*. A caregiver also meets the definition of a "practitioner" in that a caregiver, whose practice is

functionally identical to that of a pharmacist, qualifies as "*any other person licensed, registered, or otherwise permitted . . . [in] the jurisdiction in which he practices or does research, to distribute, dispense, conduct research with respect to, administer, or use in teaching or chemical analysis, a controlled substance in the course of professional practice or research.*" 21 U.S.C. § 802(21) (emphasis supplied). Finally, it follows from the foregoing that a registered caregiver or provider administers or dispenses the medical marijuana "in the course of his professional practice," either in his capacity as a registered caregiver or, alternatively, as an agent of the physician who authorizes the provision of medical marijuana. 21 U.S.C. § 802(15).

In *United States v. Oakland Cannabis Buyers' Cooperative*, 532 U.S. 483 (2001), the Supreme Court held that there is no "medical necessity" defense under the CSA because marijuana is a Schedule I controlled substance for which there is "no currently accepted medical use." *Id*. at 492. However, *Oakland Cannabis* dealt only with the issue of whether the common law defense of necessity could be reconciled with the language of the CSA. *Id*. at 490. The Supreme Court held that it could not. However, the argument raised herein was neither aired nor disposed of in *Oakland Cannabis*.

This case more closely resembles *Gonzales v. Oregon*, where the Supreme Court had to determine the extent to which the CSA provided the Government with the authority to regulate "medical practice beyond prohibiting a doctor from acting as a drug 'pusher' instead of a physician." *Gonzales v. Oregon*, 546 U.S. at 269. Here, the State of Montana, exercising its police power, saw fit to create a broad statutory and regulatory framework to govern the medical use of marijuana. The definition of "manufacture" under the CSA expressly permits states to define the scope of medical practice and allows for states to register practitioners or providers, in their varied capacities, for the purpose of distributing medical marijuana in conformity with state law.

This case is not about drug pushers. It is about the interplay and co-existence of Montana law and the CSA. Under the reading of the statute urged here, where a caregiver, acting as a practitioner within Montana's medical regime, cultivates marijuana in conformity with the law, no criminal liability lies for the manufacture of that drug. This is not to say that there can be no criminal liability for the manufacture of marijuana that exceeds the scope of the state law.

## CONCLUSION

Based on the plain language of the definition of "manufacture," the actions of Mason cannot serve as a basis for criminal liability for the manufacture of marijuana. As such, Counts I and II of the Indictment must be dismissed.

DATED this 13th day of January, 2017.

/s/ Ashley Harada
_____
Ashley Harada
Attorney for Defendant

## CERTIFICATE OF SERVICE - L.R. 5.2(b)

I hereby certify that on January 13, 2017, a copy of the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| \_1-4 \_\_\_\_ | CM-ECF |
| _____ | Hand Delivery |
| _____ | Fax |
| _____ | Mail |
| _____ | E-Mail |

1.  Clerk, U.S. District Court

2.  Brendan McCarthy
    OFFICE OF THE U.S. ATTORNEY
    2601 Second Avenue North
    Box 3200
    Billings, MT 59101
    Counsel for the United States

3.  Herman A. Watson, III
    WATSON LAW OFFICE
    424 East Main Street, Suite 203A
    Bozeman, MT 59715
    Counsel for Charlton Victor Campbell

/s/ Ashley Harada
_____
Ashley Harada